**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

In re:

RADER, BRANDON SCOTT,

                                        Debtor.

Case No. 26-12138-JDL

Chapter 11

**MOTION OF THE UNITED STATE TRUSTEE TO DISMISS CASE, WITH BRIEF,**
**NOTICE OF OPPORTUNITY FOR HEARING, AND NOTICE OF HEARING**

**NOTICE OF OPPORTUNITY FOR HEARING**

**NOTICE OF OPPORTUNITY FOR HEARING Your rights may be affected. You should read this Document carefully and consult your attorney about your rights and the effect of this Document.** If you do not want the Court to grant the motion, or you wish to have your views considered, you must file a written response to the motion with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean McGee Avenue, Oklahoma City, OK 73102 no later than **21 days** from the date of filing of the motion. You should also serve a file-stamped copy of the response to the undersigned [and others who are required to be served] and file a certificate or affidavit of service with the Court.

**[Note – this is a flat twenty-one (21) days regardless of the manner of service.]**

**NOTICE OF HEARING**
**(TO BE HELD IF A RESPONSE IS FILED)**

        Notice is hereby given that if a response to the motion is filed, the hearing on the matter will be held on **Thursday, July 23, 2026**, at **10:00 a.m.** in the **2nd floor courtroom** of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102. If no response is timely filed and the court grants the requested relief prior to the above-referenced hearing date, the hearing will be stricken from the docket of the Court.

        United States Trustee, Ilene J. Lashinsky ("**UST**"), in furtherance of the administrative

responsibilities imposed under 28 U.S.C. § 586(a), respectfully requests this Court to enter an

order dismissing this case under 11 U.S.C. § 1112(b).

**A.      Facts.**

*Debtor & Spouse's Pre-Bankruptcy Litigation:*

        1.      Debtor is married to Jennifer Catherine Rader ("**Jennifer Rader**" or "**Mrs. Rader**").

2.　Debtor was a defendant in the following 12 active cases when he filed bankruptcy (case names have been shortened to remove all defendants other than Debtor and his wife):

> *Francisco Ortiz, v. Brandon Rader*, Oklahoma County Case No. CS-2024-10177;
>
> *CCEHG-2024-Campbell, LLC v. Brandon Rader*, Oklahoma County Case No. CJ-2025-2342 (*$943,089.15 Agreed Judgment entered November 18, 2025*);
>
> *Sandpiper Plumbing & Construction LLP, v. Brandon Rader*, Oklahoma County Case No. CJ-2025-3863;
>
> *Hernandez Sprinkler & Landscaping, LLC v. Brandon Rader*, Oklahoma County Case No. CJ-2025-5305;
>
> *HSE Architects, LLC, v. Brandon Rader*, Oklahoma County Case No. CJ-2025-5542;
>
> *Valliance Bank v. Brandon Rader and Jennifer Rader*, Oklahoma County Case No. CJ-2025-7214 (*$500,000.00+ Judgment entered January 15, 2026*) (the "**Valliance Bank Case**");
>
> *Pace Equity LLC, v. Brandon Rader*, Oklahoma County Case No. CV-2025-2983 (*domestication of $400,000.00 foreign Judgment*)
>
> *Edmond Spiritual Assembly of the BahaIs Of Edmond, a/k/a Spiritual Assembly of the Bahai's of Edmond v. Brandon Rader*, Oklahoma County Case No. CJ-2026-707;
>
> *Capital One, N.A. v. Brandon Rader*, Oklahoma County Case No. CJ-2026-1295;
>
> *Capital One, N.A. v. Brandon Rader*, Oklahoma County Case No. CJ-2026-300;
>
> *Samson MCA LLC, v. Brandon Rader and Jennifer Rader*, Oklahoma County Case No. CV-2025-2055 (*domestication of $267,407.74 foreign Judgment*); and,
>
> *Pinpar Lending LLC, v. Brandon Rader and Jennifer Rader*, Oklahoma County Case No. CJ-2025-3439 (*$350,000.00 Judgment entered September 11, 2025*)

3.　In the Valliance Bank Case, Valliance sued to foreclose the residential real estate that Debtor and his wife live in (the "**Real Property**").

4.　BancFirst appears to hold a second position mortgage on the Real Property in an amount of $21,000,00.00 or more.

5.    According to the Oklahoma County Assessor[1], Debtor and Mrs. Rader failed to pay *ad valorem* property taxes on the Real Property in the last three years, and currently owe:

| | |
|---|---|
| 2025: | $14,024.30 |
| 2024: | $15,859.68 |
| 2023: | $17,440.51 |
| **Total:** | **$47,324.49** |

6.    On February 9, 2026, the Real Property appraised for $1,200,000.00.

7.    On March 17, 2026, the Real Property sold at Sheriff Sale for $1,013,000.00.

8.    A hearing to confirm the Sheriff Sale was set for May 15, 2026 (the "**Confirmarion Hearing**").

*Debtor's Wife's Previous Chapter 11 Bankruptcy Case:*

9.    On May 15, 2026, Jennifer Rader filed a bare-bones chapter 11 case in the United States Bankruptcy Court for the Western District of Oklahoma, Case No. 26-11361.

10.    Mrs. Rader's bankruptcy was filed shortly before the Confirmation Hearing.

11.    She declared debts of between $10 - $50,000,000.00.  [26-11631, Doc. 1, p. 7, # 19.]

12.    The only two debts she listed were a $571,000.00 debt to Valliance Bank, and a $21,000,000.00 debt to BancFirst. [26-11631, Doc. 1, p. 10.]

13.    An Order dismissing her case was entered on June 8, 2026, which included a 180-day bar from refiling.  [26-11631, Doc. 24, p. 4, ¶ 3.]

*Debtor's Current Chapter 11 Case:*

14.    Debtor filed a *pro-se* bare-bones chapter 11 case on June 26, 2026 (the "**Petition Date**"). [Doc. 1.]

---

[1] https://docs.oklahomacounty.org/treasurer/AccountNumberResults.asp?PropertyID=214361050

15.   He filed his case at 10:43 a.m., only seven minutes before the start of Valliance Bank's re-scheduled Confirmation Hearing.

16.   He claimed he was "a small business debtor." [Doc. 1, p. 4, # 13.]

17.   He estimated all his debts to be between $10 - $50,000,000.00.  [Doc. 1, p. 7, # 19.]

18.   Although Mrs. Rader disclosed her and her husband's joint debts to Valliance Bank and BancFirst [26-11631, Doc. 1, p. 10], Debtor omitted these clearly known obligations.

19.   Instead, Debtor disclosed only a $400,000.00 Judgment debt to PACE Equity, LLC, and a $289,270.00 Judgment debt to Samson MCA, LLC.  [Doc. 1, p. 10.]

20.   Shannon Vencill, Auditor for the UST ("**Ms. Vencill**"), is tasked with obtaining vital records from all chapter 11 debtors in order to conduct an Initial Debtor Interview ("**IDI**").

21.   At 5:44 p.m. on the Petition Date, Ms. Vencill emailed Debtor telling him of his duty to obtain a Debtor in Possession bank account, and asking that he provide, no later than the close of business Monday, June 29, 2026, the following:

> Proof of insurance for all personal and business assets; and
>
> Financial account statements for every bank account, whether traditional or online, for which he held signatory rights, for the period of January 1, 2026 – Present.

22.   Those documents are necessary so that Ms. Vencill can adequately prepare for and conduct the IDI, and to ensure that bankruptcy estate assets are protected.

23.   Debtor failed to respond to the email or contact Ms. Vencill regarding the documents.

24.   Ms. Vencill emailed Debtor at 8:00 a.m. June 29, 2026, again requesting the documents, this time by close of business that day.

25.   He again failed to respond or contact Ms. Vencill regarding the documents.

***Debtor has significant past-due Ad Valorem Tax Liabilities and no insurance covering the Real Property.***

26.    Debtor has totally failed to pay ad valorem taxes due on the Real Property for the last three years.  In Oklahoma County, this places the Real Property at risk of being sold at a tax sale.

27.    Debtor owes $47,324.49 in taxes associated with the Real Property.

***Debtor refused to provide any evidence of insurance covering the Real Property:***

28.    Debtor has been contacted twice by Ms. Vencill to provide evidence of insurance.

29.    All debtors are required to provide such information, as such coverage is required by the United States Trustee Program.

***Debtor has hidden his income, thereby failing to establish an ability to reorganize:***

30.    Debtor and Mrs. Rader are clearly filing bankruptcy to prevent Valliance Bank from confirming the Sheriff Sale of the Real Property.

31.    Thus, Debtor has known since the dismissal of his wife's bankruptcy case on June 8, 2026, that he would need to file bankruptcy to stop any continued hearing.

32.    It is inexcusable that in the 18 days between dismissal of Mrs. Rader's bankruptcy and the Petition Date that Debtor did not have full bankruptcy schedules prepared.

33.    It is equally inexcusable that Debtor refused to provide banking or other information to Ms. Vencill that would establish an ability to reorganize, much less pay for insurance premiums.

34.    With no income, Debtor has no ability to reorganize and his case should be dismissed.

***Debtor has grossly mismanaged the bankruptcy estate:***

35.    Debtor's *pro se* status does not relieve him of his obligations to the UST, or his duties under the Bankruptcy Code and Bankruptcy Rules.

36.    To date, Debtor has twice refused to provide Ms. Vencill the information she need in order to schedule and conduct his IDI.

37.    Debtor has given no evidence that he obtained Debtor in Possession bank accounts.

38.    Debtor has failed to prove the Real Property is insured.

39.    Debtor has failed to pay *ad valorem* taxes related to the Real Property.

40.    Debtor has failed to file his Schedules or Statement of Financial Affairs, even though he had no less than 18-days' notice they would be needed.

41.    Debtor left off the two secured creditors that are at the heart of the Valliance Bank Case to foreclose Debtor's Real Property – even though his wife listed them in her case!

***Debtor has acted in bad faith:***

42.    Debtor did not file a joint case with his wife so that the couple could file serial bankruptcy cases to prevent confirmation of the Real Property's Sheriff Sale.

43.    This is evident by Mrs. Rader's failure to file any required bankruptcy schedule or other document in her case, as well as Debtor's exact same failure.

44.    It is also evident by Debtor's refusal to comply with repeated UST requests.

45.    Debtor's actions are an abuse of the bankruptcy system.

***Debtor's debt level excludes him from being a small business debtor:***

46.    Section 101(51(D)) limits "small business debtors" to those having total debt less than $3,424,000.00;

47.    Debtor designated his case as small business case, but has between $10 - $50,000,000.00 in debt.  [Doc. 1, p. 4, # 13; p. 7, # 19.]

**B.**    **Legal Standard for Conversion or Dismissal.**

48.    Section 1112(b) requires that the Court shall, in the absence of "unusual circumstances," convert a chapter 11 case to one under Chapter 7, or dismiss the case, if a party in interest establishes "cause." *In re TCR of Denver*, LLC, 338 B.R. 494, 498 (Bankr. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)").

49.    Section 1112(b)(4) sets out a long and non-exclusive list of examples of cause including: (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; and (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public. 11 U.S.C. § 1112(b)(4)(A), (B) and (C).

50.    The enumerated examples of "cause" are non-exhaustive.  Therefore, non-identified acts or failures to act may also constitute cause.  *In re Whetten*, 473 B.R. 380, 382 (Bankr. Colo. 2012).

51.    Section 1112(b) further provides that this Court shall convert a case under chapter 11 to one under chapter 7 or dismiss the case, "whichever is in the best interests of creditors and the estate," for cause.

52.    Generally, the Court may not convert or dismiss the case if there are "unusual circumstances" established showing that conversion or dismissal is not in the best interests of the creditors and the estate.  Provided, there must be a reasonable likelihood that a plan will be confirmed within a reasonable time, there is "reasonable justification for the acts or omissions"

serving as grounds for the motion, and the act or omission will be cured within a "reasonable period of time fixed by the court."  No "unusual circumstances" exist here.

**C.     The Court should dismiss this small business case because Debtor's debts exceed the definition limit contained in § 101(D)(51).**

53.     Debtor designated his case a "small business case."  refused to turn over banking records to the UST or disclose his income.

54.     This designation comes with various benefits and burdens relative to a "standard" chapter 11 case.

55.     His declared estimated debts exclude him from the ability to maintain a small business case and, thus, his case should be dismissed [Doc. 1, p. 4, # 13; p. 7, # 19.]

**D.     The Court should dismiss this case under § 1112(b)(4)(A) because of substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.**

56.     Debtor refused to turn over banking records to the UST or disclose his income.

57.     Debtor was a defendant in 12 active lawsuits on the Petition Date.

58.     Debtor claims to have between $10,000,000.01 and $50,000,000.00 in debt.

59.     Debtor has not had enough income to pay *ad valorem* taxes on the Real Property in the last three years; these taxes, and other administrative claims, continue to accrue each day.

60.     Debtor's lack of income means he cannot reorganize under Chapter 11.

61.     Consequently, the Court should dismiss this case.

**E.     The Court should dismiss this case under § 1112(b)(4)(B) for Debtor's gross mismanagement of the estate.**

62.     As outlined above, Debtor has allowed tens of thousands of dollars in unpaid real property taxes to accrue against the Real Property.

63.     Debtor has failed to adequately insure the Real Property.

64.     Debtor has refused to cooperate with the UST, and is grossly mismanaging the estate; consequently, the Court should dismiss this case.

**F.     The Court should dismiss this case under § 1112(b)(4)(C) for Debtor's failure to maintain appropriate insurance.**

65.     The Bankruptcy Code the and UST require estate property to be insured.

66.     The UST can only conclude from Debtor's refusal to establish the existence of adequate insurance, that no such insurance exists.

67.     Consequently, the Court should dismiss this case.

**G.     The Court should dismiss this case under § 1112(b)(4)(H) for Debtor's failure to timely provide information to the UST.**

68.     The UST, through Ms. Vencill, has diligently tried to obtain critical financial and insurance information from Debtor.

69.     The early turn over of this information is required by the UST's duties under the Bankruptcy Code to ensure adequate insurance, insure Debtor in Possession accounts are quickly obtained, and to conduct an IDI.

70.     His refusal to cooperate with the UST justifies dismissal of this case.

**H.     The Court should dismiss this case for Debtor's exhibited bad faith.**

71.     The Tenth Circuit has posited the following, non-exclusive factors for evaluating whether to dismiss a case for bad faith:

    a.  the debtor has one asset;

    b.  the pre-petition conduct of the debtor has been improper;

    c.  there are only a few unsecured creditors;

    d.  the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending the foreclosure in state court;

    e.  the debtor has no ongoing business or employees; and

    f.  the lack of possibility of reorganization.

*In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1416 (10th Cir.1996) (citing In re Laguna Assocs. *Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994), as amended on denial of reh'g and reh'g en banc (Sept. 9, 1994)).

72. Debtor's failure to file Schedules has hidden whether he has only one asset.

73. The sheer volume of lawsuits Debtor is defending shows there are likely many unsecured creditors.

74. However, Debtor's Real Property has clearly been sold by Sheriff Sale in the Valliance Bank Case, and Debtor and his wife were unsuccessful in stopping the sale.

75. So, they engaged in a scheme of filing bankruptcy separately, when they clearly jointly liable under several huge money judgments, so that they could frustrate confirmation of the Sheriff Sale as long as possible.

76. Further, as Mrs. Rader's failure to advance her bankruptcy case resulted in a dismissal that included a 180-day bar to refiling, Debtor has similarly failed to advance his case.

77. While the UST understands this case is in its infancy, it does not stand alone; it stands in the shadow of Mrs. Rader's dismissed case, and share many similarities with it.

78. Further, Debtor has impeded the UST's ability to ensure that estate assets are insured, and to conduct the mandatory IDI.

79. Debtor's bad faith conduct justifies not only dismissal of his case, but a 180-day bar on refiling bankruptcy.

**I.      Requested relief.**

80.   Based on the foregoing, the UST respectfully requests that this Court enter an Order (i) dismissing this case, (ii) barring Debtor from refiling bankruptcy for 180 days, and (iii) granting such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

s/ Jeffrey E. Tate
Marjorie J. Creasey, OBA #17819
Jeffrey E. Tate, OBA #17150
Office of the United States Trustee
215 Dean A. McGee, Fourth Floor
Oklahoma City, OK  73102
(202) 603-5228  |  (405) 231-5958 [fax]
Marjorie.Creasey@usdoj.gov
Jeff.Tate@usdoj.gov

### CERTIFICATE OF SERVICE

This is to certify that on July 1, 2026, the undersigned served a true and correct copy of the foregoing motion by first class mail, postage prepaid, on those parties in interest set forth on the mailing list attached to the original motion filed with the Court.

s/ Jeffrey E. Tate
Jeffrey E. Tate, OBA #17150